# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

PHILIP BOLER,          )
                      )
     Plaintiff,       )
                      )
v.                )     No. 2:17-cv-00303-JEO
                      )
BANK OF AMERICA, N.A. and  )
SPECIALIZED LOAN     )
SERVICING LLC,       )
     Defendants.     )

## MEMORANDUM OPINION

This case is before the Court on the Defendants' motions to dismiss plaintiff Philip Boler's amended complaint. The case arises out of the Defendants' alleged improper servicing of Boler's mortgage loan. In his amended complaint, Boler alleges that the Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., breached the terms of his note and mortgage, and committed a variety of state law torts. (Doc. 12).[1] Defendant Bank of America, N.A. ("BANA") has moved for dismissal of all of Boler's claims, while defendant Specialized Loan Servicing LLC ("SLS") has moved for dismissal of all the claims except for the RESPA claim. (Docs. 18 & 21). For the reasons

---

[1] References to "Doc. __" are to the documents numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

discussed below, BANA's motion to dismiss will be granted in part and denied in part and SLS's motion will be granted in its entirety.

## BACKGROUND

Boler initiated this action against BANA and SLS in the Circuit Court of Jefferson County, Alabama. In his original complaint, Boler alleged that he owned a house secured by a mortgage and that "at some point" in time BANA and SLS began servicing his mortgage loan. (Doc. 1-1, ¶¶ 7-8). He based his complaint on three general sets of allegations. First, Boler alleged that he suffered a loss on his house and that his insurer paid the insurance proceeds, which were to be used to repair the house, to SLS. According to Boler, SLS refused to give him the insurance money for many months, which rendered him unable to repair the house and ultimately resulted in its demolition by the City of Birmingham. (*Id.*, ¶¶ 9-14). Second, Boler alleged that he sent numerous letters to the Defendants seeking loan servicing information and requesting the Defendants to fix servicing errors, but the Defendants failed to properly acknowledge and respond to the letters.[2] (*Id.*, ¶¶ 18-31). Third, Boler alleged that the Defendants sent him false monthly mortgage statements and threatened foreclosure and other "illegal" collection activities. (*Id.*, ¶¶ 32-39). He asserted claims for violations of RESPA, breach of contract, conversion, negligent/wanton/intentional hiring and supervision of incompetent

---

[2] Boler did not attach copies of the letters to the complaint.

debt collectors, wanton conduct, and invasion of privacy. His conversion claim was asserted against SLS; all of his other claims were asserted against both Defendants.

The Defendants removed the action to this court and then filed separate motions to dismiss the complaint. (Docs. 6 & 7). In response, Boler filed an amended complaint that amplifies some of his allegations and revises others. (Doc. 12). In particular, the amended complaint adds the allegation that BANA and SLS are both parties to his note and mortgage, the "contracts" they allegedly breached. (*Id.*, ¶¶ 8-10, 99). The amended complaint also alleges that BANA and SLS "have acted at all relevant times as a servicer on this loan and discovery will reveal which entity at which time was a master servicer and which entity was a sub servicer …." (*Id.*, ¶ 13).

In contrast to his initial complaint, Boler's amended complaint alleges that "Defendants"—not just SLS—received the insurance money that was to be used to repair his house and that "Defendants" had an obligation to transmit the money to him but refused to do so for many months. (Doc. 12, ¶¶ 16-21). As before, Boler alleges that he was unable to repair the house without the insurance money and that the house was ultimately demolished by the City of Birmingham due to the lack of repairs. (*Id.*, ¶¶ 23-25). In a footnote, Boler asserts that it is "unclear if it was only Defendant SLS acting alone or if Defendant [BANA] was also involved as a

servicer (master or sub) … so both Defendants are alleged to have been involved [in] and responsible for this misconduct." (*Id.*, n.2).

Boler's amended complaint also includes, as exhibits, copies of the letters he claims he sent to SLS and BANA, including two letters he allegedly sent to BANA on March 8, 2016, and two letters he allegedly sent to BANA on June 10, 2016. (Doc. 12, Exhibits A-G). In keeping with his original complaint, Boler alleges that SLS and BANA failed to timely and/or substantively respond to his letters. (*Id.*, ¶¶ 46-82).

Similar to his initial complaint, Boler's amended complaint alleges that the Defendants sent him inaccurate monthly mortgage statements and threatened foreclosure and other "illegal" collection activities. (Doc. 12, ¶¶ 45, 85-88). The amended complaint also adds the specific allegation that on December 22, 2014, "agents and attorneys" for the Defendants told the City of Birmingham that his property had been foreclosed when in fact it had not. (*Id.*, ¶¶ 29-30).

Boler's amended complaint contains eight claims: violations of RESPA (Count I); breach of contract (Count II); conversion (Count III); negligent hiring, training and supervision of incompetent debt collectors (Count IV); wanton hiring, training and supervision of incompetent debt collectors (Count V); intentional hiring, training and supervision of incompetent debt collectors (Count VI); negligent and wanton conduct (Count VII); and invasion of privacy (Count VIII).

All of the claims, including the conversion claim, are asserted against both BANA and SLS.

As before, the Defendants have filed motions to dismiss Boler's amended complaint. BANA has moved for dismissal of all of Boler's claims. (Doc. 18). SLS has moved for dismissal of Boler's state law claims, but not his RESPA claim. (Doc. 21). The motions have been fully briefed and are ripe for decision. Because the motions raise many similar arguments, the Court will consider both motions together.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted). In considering a motion to dismiss, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

**ANALYSIS**

**1.    Boler's RESPA claim against BANA**

In Count I of his amended complaint, Boler alleges that the Defendants

violated RESPA by failing to acknowledge receipt of his notice-of-error and

request-for-information letters in a timely manner, and by failing to provide him

with timely substantive responses to his letters. (Doc. 12, ¶¶ 93-95).  Although his

RESPA claim is asserted against both Defendants, only BANA has moved for

dismissal of this claim.

BANA first argues that Boler's RESPA claim should be dismissed because

he has "fail[ed] to allege that BANA, and not SLS, was the servicer of [his] loan

when he sent the March 8 and June 10 [2016] letters to BANA." (Doc. 18 at 7).

Under RESPA, a "servicer" is "the person responsible for servicing of a loan

(including the person who makes or holds a loan if such person also services the

loan)." 12 U.S.C. § 2605(i)(2).  Here, Boler has expressly alleged in his amended

complaint that BANA  is a "servicer" under RESPA; that BANA and SLS acted

"at all relevant times" as a "servicer" for his loan; and that "each Defendant

(individually and jointly) has always acted as a servicer" for the loan. (Doc. 12, ¶¶

4, 13).  In addition, the first letter Boler allegedly sent to BANA on March 8, 2016,

requested a copy of the "complete servicing file" for his loan, and the follow-up

letter Boler allegedly sent to BANA on June 10, 2016, confirms that BANA sent

him the servicing file on March 22, 2016, as requested. (*Id.*, Ex. D at 89, Ex. G at 111). The Court is satisfied that Boler has sufficiently alleged that BANA was a servicer of his loan at the time he sent his letters to BANA in March and June 2016.

BANA also argues Boler's RESPA claim should be dismissed because he has "fail[ed] to establish that any of the letters [he sent to BANA] constitutes a QWR [qualified written request] relating to the servicing of his loan." (Doc. 18 at 7). The "servicing" of a loan consists of "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts …, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). A "qualified written request" is written correspondence to the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). BANA argues that "none of [Boler's letters to BANA] constitutes a QWR because they do not relate to [Boler's] periodic payments of interest and

principal … [and] do not relate to the servicing of [his] loan and cannot form the basis" of his RESPA claim. (Doc. 18 at 7).

BANA's argument ignores Regulation X, RESPA's implementing regulation. 12 C.F.R. § 1024 (2015). As implemented by Regulation X, RESPA "allows borrowers to notify mortgage servicers of possible account errors." *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 907 (11th Cir. 2016)[3] (citing 12 C.F.R. § 1024.35). "A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error" for purposes of Regulation X. 12 C.F.R. § 1024.35(a). However, the "[s]cope of error resolution" includes a variety of categories of covered errors, including "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower" and "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b); *see Nunez*, 648 F. App'x at 907 ("Account errors are broadly defined by § 1024.35(b)"). Once a servicer has been properly notified of a possible account error, the servicer "must respond in one of two ways:

> (A) Correct[ ] the error or errors identified by the borrower and provid[e] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

> (B) Conduct[ ] a reasonable investigation and provid[e] the borrower
> with a written notification that includes a statement that the servicer
> has determined that no error occurred, a statement of the reason or
> reasons for this determination, a statement of the borrower's right to
> request documents relied upon by the servicer in reaching its
> determination, information regarding how the borrower can request
> such documents, and contact information, including a telephone
> number, for further assistance."

*Nunez*, 648 F. App'x at 907 (citing 12 C.F.R. § 1024.35(e)(1)(i)).

Here, the Court is satisfied that at least two of Boler's letters to BANA are sufficient to support his RESPA claim against BANA and to allow the claim to go forward. The second letter Boler allegedly sent to BANA on March 8, 2016, notified BANA it had "made an error force placing insurance" on his property and asked BANA to fix the error by, among other corrective actions, refunding any money he had been "improperly charged."[4] (Doc. 12, Ex. D at 91). Likewise, the first letter Boler allegedly sent to BANA on June 10, 2016, questioned "over $4,000 of fees and expenses" listed in his servicing file and pointed out that his file reflected "at least 30 if not 40 property inspections on March 16, 2016" as well as charges for "yard maintenance and photos and something called 'Boarding.'" (*Id.*, Ex. G at 111). Boler asked BANA for information regarding "all the charges listed in the servicing file and … all expenses/fees reflected in the mortgage statement"

---

[4] The Court notes that Subpart C of Regulation X, which covers "Mortgage Servicing," includes a section on force-placed insurance. *See* 12 C.F.R. § 1024.37. In other words, Regulation X treats force-placed insurance as a servicing matter.

and to fix any errors. (*Id.*)  Both of these letters identify the imposition of fees or charges that Boler claims BANA improperly imposed upon him, and he alleges that BANA failed to respond to the letters in a timely and substantive manner. (*Id.*, ¶¶ 68-69, 81-82).  Accordingly, BANA's motion to dismiss Boler's RESPA claim will be denied.

## 2.    Boler's breach of contract claim

Boler alleges in his amended complaint that BANA and SLS are both parties to his note and mortgage. (Doc. 12, ¶¶ 8-10).  In Count II, he alleges that both Defendants breached these "contracts" through their "wrongful" conduct. (*Id.*, ¶¶ 98-101).  In their motions to dismiss, BANA and SLS argue that Boler has failed to adequately plead that they are parties to his note or his mortgage, because he has not alleged that either Defendant is the payee on the note, the mortgagee under the mortgage, or an assignee thereof.  (Doc. 18 at 8; Doc. 21at 6).  They also argue that Boler has failed to allege what specific contractual duties and what specific contractual provisions they allegedly breached. (Doc. 18 at 9, Doc. 21 at 6-7). Based on these alleged pleading deficiencies, BANA and SLS assert that Boler's breach of contract claim is due to be dismissed pursuant to Rule 12 (b)(6).  The Court agrees.

As BANA and SLS have noted, a loan servicer is not necessarily a party to the underlying loan documents. *See* 12 U.S.C. § 2605(i)(2) (a "servicer" of a loan

includes the person who makes or holds the loan "if such person also services the loan"). Boler has alleged that BANA and SLS are servicers of his loan **and** parties to his note and mortgage, but he has offered no facts to support the latter allegation. He simply alleges that he has "a loan secured by a residential mortgage," that "[t]wo contracts exist (or one contract with two parts)—the note and mortgage," and that BANA and SLS are each a "party to the contracts." (Doc. 12, ¶¶6, 8-10). He does not identify the maker of his loan or the amount of the loan; he does not allege when he entered into the note and mortgage; he does not identify the payee of the note; he does not identify the mortgagee; and he does not allege when and how BANA and SLS became parties to the note and mortgage and in what capacity. He has alleged no facts that would enable the Court to draw the reasonable inference that BANA and SLS are parties to the note and mortgage. In fact, elsewhere in Boler's amended complaint he expressly alleges that "there is not even a contract between Defendants" and himself. (Doc. 12, ¶ 130).

Moreover, even assuming that BANA and SLS are parties to Boler's note and mortgage, his breach of contract claim still fails to meet the federal pleading standards. Boler offers general allegations that the Defendants rejected some of his payments, failed to provide him with loss mitigation options to avoid a foreclosure on his home, imposed bogus fees, charges and expenses, and threatened foreclosure and other "illegal" collection activities (doc. 12 at ¶¶ 26-28, 85-87), but

he does not allege how these actions violated the terms of his note and mortgage or what terms were breached. In this regard, the Court notes that Boler did not attach copies of his note and mortgage to either his original complaint or his amended complaint. *See McClung v. Mortgage Elec. Registration Sys., Inc.*, 2012 WL 1642209, *6 (N.D. Ala. May 7, 2012) ("Plaintiffs have not established that the Mortgage Contract required Defendants to assist Plaintiffs in avoiding foreclosure or provide Plaintiffs the opportunity to modify their loan payments. Notably, Plaintiffs have not even attempted to show what language in the Mortgage Contract creates these duties. In fact, Plaintiffs have not even provided the court with a copy of the Mortgage Contract."). Boler merely alleges that the Defendants "breached any and all contracts with [him] by their wrongful conduct as set forth in this [a]mended [c]omplaint."[5] (Doc. 12, ¶¶ 98-99). That is not sufficient.

In his responses to the Defendants' motions to dismiss, Boler seems to argue that the letters he sent to SLS and BANA and attached to his amended complaint make clear that the "contract" was breached, but he leaves it to the Defendants and this Court to scour the letters and somehow decipher exactly what contract was breached and how. The rules of pleading require more than that. Boler's amended

---

[5] Boler's amended complaint is a "proverbial shotgun pleading" that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . ." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). "[S]hotgun pleading[s]" are "roundly, repeatedly, and consistently condemn[ed]." See *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008).

complaint does not give the Defendants "fair notice of what the . . . claim is and the grounds upon which it rests" and does not comply with the pleading requirements of *Twombly* and Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

For these reasons, Boler's breach of contract claim against BANA and SLS will be dismissed.

### 3.     Boler's conversion claim

In Count III of his amended complaint, Boler alleges that BANA and SLS are liable for wrongfully converting a "sum certain of money" that he claims belonged to him. (Doc. 12, ¶¶ 103-106).  In their motions to dismiss, BANA and SLS argue that Boler's conversion claim fails because an action for the conversion of money is proper only where there is specific money capable of identification. (Doc. 18 at 9-10; Doc. 21 at 8-9).  In response, Boler argues that he has identified a "specific or earmarked amount of money" that was withheld from him—the "exact amount of money in the check" that the Defendants received from his insurance carrier. (Doc. 26 at 14; Doc. 29 at 9).

The Court first notes that Boler's allegation that both BANA and SLS received and withheld the insurance check contradicts the very exhibits Boler attached to his amended complaint.   The letters attached to the amended complaint clearly reflect Boler's understanding that the insurance check was sent to and held by SLS and SLS alone.  Boler directed all of his inquiries and complaints about the

withholding of the insurance check to SLS. (*See* Doc. 12, Ex. A at 32, 34; Ex. B at 55, 57, 77, 79).  In addition, the second letter he sent to BANA on March 8, 2016, advised BANA that "[d]ue to SLS refusing to give [him] insurance money," the City of Birmingham had torn down his house. (Doc. 12, Ex. D at 91).  When exhibits contradict allegations, the exhibits control. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").  Because the exhibits to Boler's amended complaint show that SLS, and only SLS, possessed and held the insurance check, Boler's conversion claim against BANA is due to be dismissed as contrary to his own evidence.

Boler's conversion claim also fails against both BANA and SLS as a matter of law, even making the illogical assumption that both Defendants somehow possessed the same insurance check.  "The Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010).  Specific money capable of identification is "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered . . . where there is

an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.*" Gray v. Liberty Nat'l Life Ins. Co.,* 623 So. 2d 1156, 1160 (Ala.1993).

Here, Boler alleges that the Defendants converted the "sum certain of money" represented by his insurance check. (Doc. 12, ¶ 103). He argues that because there is a "sum certain that is represented by an actual check," he has satisfied the requirements of a conversion claim under Alabama law. (Doc. 26 at 14; Doc. 29 at 9). He has not. Under Alabama law, "an action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification." *Edwards*, 602 F.3d at 1304. Boler has merely alleged that the Defendants were required to deliver a specific amount of money—the amount of the insurance check—not any specific money itself. Stated differently, Boler has not alleged or shown that he was entitled to receive the precise insurance check that was conveyed to the Defendants, but rather that he was entitled to the "sum certain" represented by the check. Such an allegation is insufficient to give rise to a conversion claim. Accordingly, his conversion claim is due to be dismissed as to both BANA and SLS.

## 4.    Boler's claims for negligent, wanton, and intentional hiring, training, and supervision

Boler's amended complaint contains three separate counts for negligent, wanton, and intentional hiring, training, and supervision of incompetent debt

collectors (Counts IV through VI).  All three claims have common elements and fail for the same reasons.

A plaintiff alleging defects in hiring, training, and supervision must establish "(1) that the underlying conduct of one or more employees was wrongful or tortious; and (2) that [the employer] had actual or constructive knowledge of that alleged incompetence." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288.  "The 'incompetency' of the offending employee . . . must be based on an injury resulting from a tort which is recognized under Alabama common law." *Id.* (quoting *Sears v. PHP of Ala., Inc.*, 2006 WL 932044, *19 n.13 (M.D. Ala. 2006)).

Here, Boler has not alleged that the Defendants' employees committed a common law tort.  He merely alleges the Defendants' employees "are encouraged to break state law," without identifying any tort that might have been committed or any state law that may have been violated. (Doc. 12, ¶¶ 109, 115, 121).  Such a conclusory allegation does not satisfy the pleading requirements of Rule 8. *See Twombly*, 550 U.S. at 550, 557.

Moreover, Boler admits in each count that he "does not, without discovery, know the details of the incompetent hiring, training, and supervision of employees" he has alleged. (Doc. 12, ¶¶ 112, 118, 124).  He asks the Court to "infer" such incompetence because the Defendants are "leaders in the industry" and could not

possibly have allowed the "wrongful conduct" described in the amended complaint unless it was "part of a plan." (*Id.*) He asserts that "[t]he details of this will come out in discovery." (*Id.*) In other words, he has effectively conceded that his hiring, training, and supervision claims are speculative and conclusory and that he has no evidence to support the claims without conducting discovery. The discovery process, however, "should not be a fishing expedition to learn if … speculative, conclusory allegations have any basis in fact." *Dubose v. City of Hueytown*, 2016 WL 3854241, *12 (N.D. Ala. July 15, 2016). "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679-80.

Accordingly, Boler's claims for negligent, wanton, and intentional hiring, training, and supervision of incompetent employees will be dismissed.

### 5. Boler's negligent and wanton conduct claim

In Count VII, Boler asserts that BANA and SLS "had a duty, and assumed a duty," to treat him "fairly and with reasonable care" and to "not unreasonably cause [him] harm when [they] began to interact with [him] on the mortgage loan," and that BANA and SLS "negligently and/or wantonly" violated all of their duties. (Doc. 12, ¶¶ 127-29). BANA and SLS argue that this claim is, in essence, a claim for negligent/wanton loan servicing, and that the claim should be dismissed

because no such cause of action exists under Alabama law. (Doc. 26 at 13-16; Doc. 21 at 12-13. The Court agrees.

"[A] veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law." *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015); *see also Deutsche Bank Trust Co. of Americas v. Garst*, 989 F. Supp. 2d 1194, 1205 (N.D. Ala. 2013) (recognizing the "emerging consensus that Alabama does not recognize a cause of action for negligent or wanton loan servicing."). Indeed, "mortgage servicing obligations are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." *James*, 92 F. Supp. 3d at 1200. Although a mortgage servicer such as BANA or SLS may be acting as an agent of the lender and may not be a party to the underlying contract with the borrower—here, Boler asserts that "there is not even a contract" with the Defendants (doc. 12, ¶ 130)—an agent can "only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care." *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012); *see also McClung*, 2012 WL 1642209 at *8 (citing *Blake*). "Mere economic loss does not give rise to such liability[.]" *Id.*

Here, Boler does not dispute that his negligence/wantonness claim arises out of the Defendants' servicing of his mortgage loan. Although he acknowledges that there are mortgage servicing cases holding that negligence/wantonness claims fail in the absence of personal injury or property damage, he argues that those cases are nonbinding and that neither the Eleventh Circuit nor the Alabama Supreme Court has ruled on the issue. (Doc. 26 at 17; Doc. 29 at 14-15). However, he cites no contrary authority and does not even attempt to explain why this "veritable avalanche" of federal precedent was wrongly decided. Instead, Boler argues that his claim fits within the property damage "exception" to the rule that claims for negligent/wanton mortgage servicing are not allowed. (*Id.*) Specifically, he argues that he is entitled to pursue his claim because the Defendants' alleged conduct "directly and proximately led to the destruction of" his property by the City of Birmingham. (Doc. 26 at 18; Doc. 29 at 15-16).

Boler's argument is unavailing. To the extent that *Blake*—the only case cited by Boler—recognizes that a mortgage servicer could incur tort liability by causing property damage while servicing a mortgage, it is apparent that the type of property damage contemplated in *Blake* is physical damage directly caused by the servicer's physical acts, not indirect damage flowing from the servicing of the mortgage. *Blake* offers the following example:

> … [S]ay the agreement between Blake [the borrower] and BANA
> [the mortgage holder] allowed BANA to inspect the home from time-

> to-time. If BANA hired BAC [a loan servicer] to undertake the
> inspections and BAC acted unreasonably while performing this task,
> Blake could recover in tort for any personal injuries or property
> damages stemming from BAC's breach.

*Blake*, 845 F. Supp. 2d at 1210, n.3. In other words, if a servicer damages a

borrower's property while physically inspecting the property, the borrower may be

entitled to recover in tort for the direct damage caused by the servicer's breach of

duty. Here, however, the alleged property damage identified by Boler is indirect.

He does not allege that the Defendants, while servicing his mortgage, entered his

house and physically damaged it; rather, he alleges that the Defendants failed to

turn over his insurance check and falsely informed the City of Birmingham that the

house had been foreclosed, which in turn caused the City to tear down the house.

(Doc. 26 at 18, n.9; Doc. 29 at 16, n.3). The City, not the Defendants, demolished

his house. The only direct damage (if any) caused by the Defendants' alleged

actions was economic, which does not give rise to tort liability in the mortgage

servicing context. *Blake*, 845 F. Supp. 2d at 1210. Therefore, Boler's claim against

BANA and SLS for negligent/wanton conduct mortgage servicing fails as a matter

of law and will be dismissed as to both Defendants.

**6.      Boler's invasion of privacy claim**

Lastly, Boler alleges in Count VIII that the Defendants "intentionally,

recklessly, and/or negligently" interfered with his privacy by "repeatedly and

unlawfully attempting to collect a debt[.]" (Doc. 12, ¶ 137). He alleges that the

Defendants engaged in "highly offensive conduct in the course of collecting this debt including threatening to take [his] property, taking [his] money, and all other wrongful acts which will come to light in discovery[.]" (*Id.*, ¶ 138). He also alleges that the Defendants engaged in "false credit reporting" on his credit reports. (*Id.*, ¶ 139). BANA and SLS argue that Boler's invasion of privacy claim is deficient as a matter of law because it is based on vague and conclusory allegations that do not satisfy the federal pleading requirements. (Doc. 18 at 16-18; Doc. 21 at 13-14). Again, the Court agrees with the Defendants.

As this Court has observed elsewhere: "In the debtor-creditor context, invasion of privacy has been characterized as 'the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" *Thompson v. Resurgent Capital Servs.*, L.P., Case No. 2:12-cv-01018-JEO, 2015 WL 1486974, *25 (N.D. Ala. Mar. 31, 2015) (citing *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 720 (11th Cir. 2011) (internal citations omitted)). "The mere efforts of a creditor . . . to collect a debt cannot without more be considered a wrongful and actionable intrusion." *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961). Generally speaking, courts in Alabama "have only recognized intrusion … in the mortgage servicing context for 'hounding the plaintiff,' *Hope v. BSI Fin., Inc.,* 5:12–CV–00736–AKK, 2012 WL 5379177, at *5 (N.D. Ala. Oct. 26, 2012), with

'repeated conduct equating deliberate harassment[ ] or systematic campaigns designed to vilify the debtor or expose him to public ridicule,' [*Liberty Loan Corp. of Gadsden v. Mizell,* 410 So.2d 45, 48 (Ala. 1982)]." *Garst*, 989 F. Supp. 2d at 1206.

Like the bulk of his amended complaint, Boler's invasion of privacy claim is devoid of factual specifics.  He makes vague and conclusory allegations that the Defendants repeatedly and unlawfully attempted to collect his mortgage debt, but fails to allege a single specific instance of debt collection by either Defendant and fails to allege what made any such efforts unlawful.  Likewise, Boler does not provide a single example of an improper threat by either Defendant to foreclose on his mortgage and does not identify a single instance of false credit reporting by either Defendant.  Simply put, Boler has failed to provide any factual support for his conclusory allegation that the Defendants' collection efforts were unlawful and interfered with his privacy.  Therefore, his invasion of privacy claim is deficient as a matter of law.

Boler attempts to salvage his invasion of privacy claim by pointing to the Defendants' withholding of his insurance check as a "bad act" demonstrating that the Defendants "overstepped the bounds of reasonableness" in collecting his debt. (Doc. 26 at 16; Doc. 29 at 16-17).  However, there is nothing in the amended complaint to suggest that the insurance proceeds were withheld by SLS (or by

BANA, assuming BANA ever had possession of the check) as a collection tactic. Moreover, Boler has not alleged how the withholding of the proceeds constituted any sort of wrongful intrusion into his private activities.

Boler also argues that *Hope v. BSI Fin., Inc.*, 2012 WL 5379177, supports his contention that his invasion of privacy allegations are sufficient to survive the Defendants' motion to dismiss. (Doc. 26 at 20; Doc. 29 at 17-18). *Hope* actually lends support to the Defendants' position that the allegations are deficient. In *Hope*, the plaintiffs alleged that the defendants had participated in a series of wrongful acts in connection with their mortgage. The plaintiffs' complaint contained detailed factual allegations regarding the defendants' collection efforts, including allegations of specific threats to foreclose on the mortgage. *Hope*, 2012 WL 5379177 at *2. District Judge Abdul Kallon denied the defendants' motion to dismiss the plaintiffs' claim for invasion of privacy, stating:

> … To withstand a motion to dismiss [an invasion of privacy claim], a plaintiff may allege a "physical intrusion into a place in which the plaintiff has secluded himself," "an invasion of psychological solitude," or "examination into [the plaintiff's] private concerns"—so long as the plaintiff also asserts that the invasion would be offensive to a reasonable person. *Phillips* [*v. Smalley Maintenance Servs.*], 435 So.2d at 710–11, quoting Restatement [(Second) of Torts] § 652B cmt. a. The Restatement further provides that "hounding the plaintiff" to collect a valid debt can be a sufficiently offensive intrusion to satisfy the elements for this form of invasion of privacy. Restatement § 652B cmt. d.

To support their invasion of privacy claim, Plaintiffs assert that Defendants "have threatened multiple times to foreclose on Plaintiffs when Defendants have no right to do so" ***and cite multiple examples of Defendant'' collection attempts*** that purportedly caused "mental anguish, damage to reputation, [and] economic damages[.]" … Based on these allegations, and the reasonable inferences the court can draw from them, the complaint states a facially plausible claim for relief. *See Iqbal,* 129 S. Ct. at 1949. Therefore, the motion to dismiss this claim is denied.

*Id.* at *5 (emphasis added).

The detailed factual allegations in *Hope* stand in stark contrast to Boler's vague and conclusory allegations here.  Unlike the plaintiffs in *Hope*, Boler has not cited a single example of the Defendants' collection attempts, including any example of a threat to foreclose on his mortgage.  He certainly has not identified any specific acts by the Defendants that would constitute "hounding" him to collect his mortgage debt.  In the absence of any factual support for his allegations, his invasion of privacy claim fails as a matter of law.  The claim with be dismissed as to both BANA and SLS.

## CONCLUSION

For the foregoing reasons, BANA's motion to dismiss (doc. 18) will be DENIED as to Boler's RESPA claim (Count I) and GRANTED as to his state law claims (Counts II – VIII).  SLS's motion to dismiss (doc. 21) will be GRANTED in its entirety.  Consequently, the only remaining claim in this action is Boler's RESPA claim against both Defendants.

A separate order consistent with this opinion will be entered.

**DATED** this 22nd day of December, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge